**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AQUARIAN FOUNDATION, INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | |
| | § | |
| BAYDA ORABI a/k/a STARSHASUNYA, | § | CIVIL ACTION NO. _____ |
| a/k/a MILA BILA, a/k/a DJ STARSHA, | § | |
| | § | |
| SPIRITUALISM AUSTRALIA LIMITED, | § | |
| | § | |
| | § | |
| and JOHN DOES 1–10, | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE DISTRICT JUDGE:**

Plaintiff Aquarian Foundation, Inc. ("Aquarian" or "the Church") files this Original Complaint against Defendants Bayda Orabi a/k/a Starshasunya a/k/a Mila Bila a/k/a DJ Starsha ("Orabi"), Spiritualism Australia Limited ("SAL") and John Does 1-10, respectfully showing the Court as follows:

## I.  INTRODUCTION

1.      Plaintiff Aquarian Foundation, Inc. ("Aquarian" or "the Church") brings this action against Bayda Orabi a/k/a StarshaSunYa, a/k/a Mila Bila, a/k/a DJ Starsha ("Orabi"), Spiritualism Australia Limited ("SAL"), and John Does 1–10 (individually and collectively, "Defendants") for (i) copyright infringement under 17 U.S.C. §§ 101, *et*

*seq.*, (ii) trademark infringement under 15 U.S.C. § 1114, (iii) unfair competition and false designation of origin under 15 U.S.C. § 1125(a), (iv) declaratory relief under 28 U.S.C. § 2201, (v) injunctive relief under 17 U.S.C. § 502 and 15 U.S.C. § 1116, and (vi) misappropriation of trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108

2.      This case involves a set of facts that are fundamentally the same as the transactions and occurrences that formed the basis of Case No. 2:19-cv-01879-RSM; *Aquarian Foundation, Inc. v. Bruce Lowndes*; In the United States District Court for the Western District of Washington. That case involved the questions of (i) whether Aquarian owned the copyrights in the religious works of its late founder, Keith Milton Rhinehart; (ii) whether those works were works made for hire; (iii) whether an alleged 1985 license from Rhinehart to Bruce Lowndes remained valid; (iv) whether Aquarian could terminate that license; and (v) whether Lowndes infringed Aquarian's rights in the CHURCH OF HIGHER SPIRITUALISM trademark.

3.      On summary judgment, the district court ruled as a matter of law that Aquarian was the sole owner the copyright interests in the subject Works (as defined in ¶ 16 below), having received them through Rhinehart's testamentary bequest. Pl. Ex. 1, Summ. Jmt. Order. After a bench trial[1], the district court ruled that the Works were not works for hire, that Lowndes held a valid license, and that the license could not be terminated because the termination provisions of 17 U.S.C. § 203 applied and Aquarian had not complied with them.

---

[1] Counsel for Aquarian in this case did not participate in the trial in the Seattle case.

4.    The decision was appealed to the United States Court of Appeals for the Ninth Circuit, and the Ninth Circuit ruled that (i) the district court correctly determined the Works were not works for hire, (ii) Aquarian nonetheless owned the copyrights through Rhinehart's testamentary bequest, (iii) the termination provisions of § 203 did not apply because Aquarian was not a statutory heir, meaning the license was terminable at will and was terminated by Aquarian's counsel on May 7, 2021, and (iv) Aquarian had a reasonable basis for its trademark claim. Pl. Ex. 2, Ninth Circuit Op.

5.    On remand, the district court ruled that Aquarian had failed to present sufficient evidence of post-May 7, 2021 infringement at trial, denied Aquarian's requests for injunctive relief and attorney's fees, and closed the case. Pl. Ex. 3, Order on Remand.

6.    Despite knowing that Defendants do not have a license to exploit the subject Works, Defendants continue to reproduce, distribute, publicly display, and publicly perform Aquarian's Registered Works (as defined in ¶ 17 below) on social media platforms accessible in the United States, including YouTube, TikTok, X (formerly Twitter), Instagram, Facebook, and vk.com.

7.    Defendants also continue to use marks confusingly similar to Aquarian's CHURCH OF HIGHER SPIRITUALISM mark, which is the subject of U.S. Trademark Reg. No. 6,051,941, and to Aquarian's Aquarian Mandala trefoil marks (the "Trefoil Marks"), which are the subject of U.S. Trademark Reg. Nos. 6,922,668; 6,922,669; and 6,622,746, in connection with identical services. Defendants also have continued to use the mark KEITH MILTON RHINEHART (the "KMR Mark") in connection with identical services without Aquarian's authorization, which has been in continuous use by

Aquarian since 1955 and for which it has received a notice of allowance from the USPTO. Pl. Ex. 4, Trademarks. Aquarian is the sole owner of all right, title and interest in and to the CHURCH OF HIGHER SPIRITUALISM  mark, the Trefoil Marks and the KMR Mark (collectively, the "Trademarks"), each of which is attached hereto in Exhibit 4. Pl. Ex. 4, Trademarks.

8.      Lastly, when Aquarian has filed takedown notices under the Digital Millennium Copyright Act ("DMCA"), the Defendants have responded with counter-notifications containing false statements under penalty of perjury and have publicly declared their intent to continue posting the infringing works and marks online.

9.      All exhibits attached to this Complaint are true and correct copies of the originals, and they are incorporated by reference. All conditions precedent have been performed or have occurred.

## II.  PARTIES

10.      Aquarian Foundation, Inc. is a Washington nonprofit corporation with its principal place of business at 315 15th Avenue East, Seattle, Washington 98112. It is also registered to transact business in Texas with its registered office located at 5900 Balcones Dr., Suite 100, Austin, Texas 78731, and a branch of the church is located at 14359 C Torrey Chase Blvd., Houston, TX 77014.

11.      Bayda Orabi a/k/a StarshaSunYa, a/k/a Mila Bila, a/k/a DJ Starsha ("Orabi") is an individual who, upon information and belief, resides at Ratchadaphisek Soi 33, Bangkok, Bangkok 10900, Thailand. Orabi provided that address and the email address bayda.orabi@gmail.com in a DMCA counter-notification submitted to YouTube

on or about June 12, 2026. Pl. Ex. 5, Counter-Notice. Thailand is not a contracting party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Orabi may be served by any method authorized by Federal Rule of Civil Procedure 4(f) and not prohibited by Thai law or international agreement, including, where appropriate, a method authorized by Rule 4(f)(2). Plaintiff may also seek leave to serve Orabi by alternative means under Rule 4(f)(3), including by email or other electronic means reasonably calculated to provide notice.

12.    Spiritualism Australia Limited ("SAL") is an Australian public company, ABN 49 672 272 025, registered on November 23, 2023. Upon information and belief, SAL's registered address is 5 West Street, St Helens, Tasmania 7216, Australia. Pl. Ex. 6, SAL Address. SAL is registered as a charity with the Australian Charities and Not-for-Profits Commission. Public records identify its responsible persons as including Bruce Kimberley Lowndes, Charles Williams Stephens, Mark Adams Lowndes, and Jennifer Renoblas Salapang Lowndes. Australia is a contracting party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. SAL may be served under Federal Rule of Civil Procedure 4(h)(2) by any method prescribed by Rule 4(f) for serving an individual in a foreign country, except personal delivery under Rule 4(f)(2)(C)(i), including through Australia's Central Authority or by other methods permitted by the Hague Convention and applicable law. Plaintiff may also seek leave under Rule 4(f)(3) for alternative service by any means not prohibited by international agreement and reasonably calculated to provide notice.

13.     John Does 1 through 10 are individuals or entities whose identities are presently unknown to Aquarian, who have participated in the unauthorized reproduction, distribution, public display, and/or public performance of Aquarian's Registered Works, Proprietary Works (as defined below in ¶ 17) and the unauthorized use of the Trademarks, acting individually or in concert with the named Defendants. Aquarian will seek leave to amend this Complaint to identify these Defendants by their true names when their identities become known through discovery or other means.

### III.  JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 17 U.S.C. §§ 101 et seq., 15 U.S.C. §§ 1114 et seq., 28 U.S.C. § 2201, 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 4(k)(2). Each Defendant is a foreign national or foreign entity that is not subject to the jurisdiction of any state's courts of general jurisdiction. Aquarian's claims arise under federal law and Washington state law. Each Defendant has directed infringing activity at the United States by uploading Aquarian's Registered Works to servers owned by United States companies (including YouTube, TikTok, Facebook, Instagram, and X) and to vk.com, where those works have been and continue to be accessed by persons in the United States, and by using marks confusingly similar to Aquarian's Trademarks in connection with services directed at consumers in the United States. Exercising jurisdiction over Defendants is consistent with the Due Process Clause of the Fifth Amendment because, without limitation, Defendants have sufficient aggregate contacts with the United States as a whole.

15. Venue is proper under 28 U.S.C. § 1391(c)(3), which provides that a defendant who is not a resident of the United States may be sued in any judicial district. Orabi is a resident of Thailand and SAL is an Australian company, and neither is a resident of the United States.

## IV. BACKGROUND FACTS

### A. THE CHURCH AND THE REGISTERED WORKS

16. The Aquarian Foundation was founded by Reverend Keith Milton Rhinehart in Seattle, Washington in 1955. Rhinehart created the Church's foundational religious writings, sermons, lectures, and recordings throughout his lifetime. The Church's teachings are embodied in approximately 561 written manuscripts, sound recordings, and audiovisual recordings (collectively, "the Works").

17. The Church owns United States copyright registrations for 221 of the 561 Works (the 221 works for which a registration has issued are referred to as the "Registered Works"). A chart identifying each Registered Work and its registration number is attached as Pl. Ex. 7, Registered Works.[2] A print-out from the U.S. Copyright Office identifying each Registered Work is attached as Pl. Ex. 8. The copyright registration certificates are attached as Pl. Ex. 9. A global assignment of all works that were inherited by Aquarian through Keith Milton Rhinehart's will, and which was

---

[2] The chart lists each of the 221 Registered Works once, identified by its primary registration number. Some works carry additional registration numbers because they were registered in more than one format (for example, as a sound recording under Form SR and separately as text under Form TX).

recorded with the U.S. Copyright Office, is attached as Pl. Ex. 10.[3] The remaining 340 Works are unpublished proprietary works ("Proprietary Works") that the Church has kept confidential and made available only to its inner sanctum. A chart identifying the Proprietary Works is attached as Exhibit Pl. Ex. 11, Proprietary Works.

18.     The Proprietary Works consist of confidential, nonpublic religious, educational, instructional, ceremonial, and archival materials authored by Rhinehart and maintained by Aquarian for restricted use within the Church. The Proprietary Works include Holy Communion meeting recordings, master class teachings, internal instruction materials, and other recordings and documents that Aquarian has never authorized for public distribution. Access to the Proprietary Works is granted progressively to members who demonstrate commitment to the Church's mission, and their restricted availability is integral to Aquarian's religious and organizational structure. The Proprietary Works derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, persons outside Aquarian's authorized membership, because their restricted availability drives membership engagement, participation, and financial support of the Church.

19.     Aquarian has taken reasonable measures to maintain the secrecy of the Proprietary Works, including limiting dissemination for authorized Church purposes,

---

[3] Exhibits 8 and 9 list or contain 286 registration certificates for the 221 Registered Works. The total exceeds 221 because the Copyright Office issued separate registrations when the same work was registered in more than one format (for example, as a sound recording under Form SR and separately as text under Form TX) and because certain original registrations were later renewed under new registration numbers (Form RE). Each of the 221 Registered Works is represented by at least one identification or certificate in Exhibits 8 and 9.

restricting access to inner sanctum members, declining to register the works with the United States Copyright Office to avoid public disclosure of their contents, and pursuing legal action and DMCA takedown notices when the materials have been posted without authorization.

20.     Lowndes obtained possession of a substantial quantity of the Proprietary Works through his prior association with the Church, including by inducing certain Aquarian Study Group leaders in Las Vegas to ship approximately 20 boxes of Church materials to him in Australia. Those materials were designated for authorized Aquarian Foundation study group use only and were not transferred to Lowndes for personal ownership, use or public dissemination. After Aquarian removed Lowndes from all Church positions, it terminated all authority he had to use Church materials and demanded return of all copies, but Lowndes refused to return the Proprietary Works. He was excommunicated from the Church by early 1997. Upon information and belief, Orabi, SAL, and persons acting with them obtained, used, posted, displayed, and distributed Proprietary Works without permission from the Church.

B.     **AQUARIAN'S OWNERSHIP OF ALL WORKS**

21.     The Ninth Circuit conclusively determined that Rhinehart's Works were not works made for hire and that Rhinehart was the original copyright owner. Pl. Ex. 2, Ninth Cir. Op. The Ninth Circuit also conclusively determined that Rhinehart's copyright interests in the Works were properly transferred to Aquarian through his last will and testament upon his death on April 30, 1999. *Id*. Aquarian is, and has been since 1999, the sole and exclusive owner of all right, title, and interest in and to all of the

Works, including all copyright interests therein.

C.     **AQUARIAN'S TRADEMARKS**

22.     Aquarian is the registrant of U.S. Trademark Registration No. 6,051,941 for the mark CHURCH OF HIGHER SPIRITUALISM (the "Higher Spiritualism Mark") for use in connection with religious instruction services and providing religious instruction in Class 41, and religious and spiritual services, including conducting religious worship, marriage ceremonies, baptismal ceremonies, baby dedications, bereavement ceremonies, religious counseling, prayer meetings, religious sermons, organization of religious meetings, and providing a website featuring information about religious belief systems in Class 45. Pl. Ex. 4, Trademarks.

23.     Rhinehart coined the term "Higher Spiritualism" in 1970 to distinguish the Church's teachings from those of traditional Spiritualism. The Church has used the CHURCH OF HIGHER SPIRITUALISM mark continuously in commerce since at least 1970. The Higher Spiritualism Mark has been on the Principal Register for more than five years and is incontestable. Pl. Ex. 4, Trademarks.

24.     Aquarian is also the registrant of U.S. Trademark Registration Nos. 6,922,668; 6,922,669; and 6,622,746 for the Trefoil Marks for use in connection with religious instruction and spiritual services. The Trefoil Marks are valid and subsisting on the Principal Register. Pl. Ex. 4, Trademarks. The Trefoil Marks depict the Aquarian Mandala, a symbol that has served as a source identifier for Aquarian's religious instruction services since the Church's founding.

25.    Aquarian has continuously used the KMR Mark as a mark in connection with its religious instruction and spiritual services since at least 1955, when the Church was founded. Pl. Ex. 13, Werner Decl. at ¶ 14. Through more than 70 years of continuous and exclusive use, the KMR Mark has acquired secondary meaning and has become distinctively associated with Aquarian's religious teachings and services in the minds of the relevant consuming public, and Aquarian has received a notice of allowance from the USPTO to register that mark. Pl. Ex. 4, Trademarks.

D.    THE TERMINATION OF THE LOWNDES LICENSE

26.    The Western District of Washington determined that on June 9, 1985, Rhinehart granted a nonexclusive license to Bruce Lowndes to use certain copyrighted materials (the "License") then owned by Rhinehart. The Ninth Circuit held that this license was valid but that it was terminated by Aquarian's counsel via letter on May 7, 2021. Pl. Ex. 2, Ninth Cir. Op.; Pl. Ex. 12, License Termination.

27.    Neither Orabi nor SAL was a party to the License, and neither of them or any other Defendant has ever possessed any license, whether express or implied, to use any of Aquarian's Works or its Trademarks.

E.    THE DEFENDANTS AND THEIR RELATIONSHIP TO LOWNDES

28.    Bruce Lowndes was excommunicated from Aquarian in early 1997. He relocated to Tasmania, Australia, and established what he called a "splinter church" using the "Higher Spiritualism" name. Pl. Ex. 13, Werner Decl. at ¶¶ 16-17. In 2019, Aquarian sued Lowndes in the Western District of Washington for copyright and trademark infringement. That case proceeded through a bench trial and appeal,

resulting in the Ninth Circuit opinion described above.

29. SAL was organized in Australia on November 23, 2023, with Lowndes listed as Chairperson. Upon information and belief, Lowndes passed away in Tasmania on or about November 22, 2025. Other responsible persons within SAL's organizational structure include Mark Adams Lowndes (Lowndes's eldest son) and Jennifer Renoblas Salapang Lowndes (daughter-in law), the wife of Matthew Lowndes (Lowndes's youngest son). SAL was created to continue and expand the same infringing activities that were the subject of the prior litigation.

30. Orabi holds herself out as a minister of "Higher Spiritualism" and the "Spiritual Leader at Large" for Higher Spiritualism Australia and Spiritualism Australia Limited. SAL's account on X (formerly Twitter) states that Spiritualism Australia Limited represents Higher Spiritualism. Orabi has been the primary person uploading Aquarian's Registered Works and Proprietary Works to social media since at least June 2025. Orabi operates under multiple aliases, including StarshaSunYa, Mila Bila, rakasunya, and DJ Starsha, across multiple platforms, including YouTube, TikTok, X (formerly Twitter), Instagram, vk.com, and Facebook. Orabi has publicly stated on TikTok and Facebook that she will not stop uploading Aquarian's materials because she believes "God's word should not be copyrighted" and that "no copyright ownership may be claimed" over spiritual lessons, comparing them to "the Scriptures of the Bibles of the world" and "accordingly no copyright ownership may be claimed - an example is the Scriptures of the Bibles of the world and "therefore a Spiritual Lesson from the Gods for mankind may not be claimed as Intellectual Property or an ownership claim." Pl. Ex.

15, Orabi Continuing Infringement.

**F.    THE DEFENDANTS' INFRINGING CONDUCT**

31.    Since at least May 7, 2021, and continuing through the date of this filing, Defendants have reproduced, distributed, publicly displayed, and publicly performed Aquarian's copyrighted Works on servers located within the United States, including servers owned by YouTube (Google LLC), TikTok (ByteDance Ltd.), Meta Platforms, Inc. (Facebook and Instagram), and X Corp. (formerly Twitter, Inc.), and on vk.com. A chart identifying the infringing works, the platforms on which they appear, and the dates on which Aquarian accessed and documented each instance of infringement, as well as the locations where the works were accessed in the United States is attached as Pl. Ex. 14, Chart of Infringing Posts.

32.    Aquarian has been forced to file hundreds of takedown notices under the DMCA directing the removal of infringing content from those platforms. In response to certain takedown notices, Orabi has filed counter-notifications under 17 U.S.C. § 512(g)(3), falsely claiming under penalty of perjury that the content was removed by mistake or that she independently created the material. *See, e.g.,* Pl. Ex. 5, Orabi Counter-Notice. On or about June 12, 2026, Orabi filed a counter-notification with YouTube in which she claimed she "independently created" a video using "my own editing, visual composition, subtitles, music selection, and artistic presentation" when the video was in fact a recording of Rhinehart's lecture titled The Ultimate Bliss and a photograph titled "Magnificent Materialization," both of which are works owned by Aquarian since at least as early as 1999. Pl. Ex. 5, Orabi Counter-Notification.

33.     SAL's website at www.spiritualismaustralia.org and its associated social media accounts advertise and distribute Aquarian's Registered Works, Proprietary Works and Trademarks. SAL's registered charitable purpose of "Digital Preservation of the Immortals teachings" is the vehicle through which Aquarian's Works and Trademarks have been and continue to be infringed. SAL has also placed Aquarian's Works and Trademarks behind a paywall, charging the public for access to materials that SAL has no right or license to possess, distribute, or sell. Pl. Ex. 13, Werner Decl. at ¶ 25.

34.     Defendants' use of "Higher Spiritualism," "Higher Spiritualism Australia," and "Spiritualism Australia," and Defendants' use of the Trefoil Marks and the KMR Mark, in connection with religious instruction and related services infringes Aquarian's rights in the Trademarks. Defendants use these marks on websites, social media accounts, YouTube channels, and other platforms in a manner that creates a likelihood of confusion with Aquarian's Trademarks. The services Defendants offer under these marks are identical to those for which Aquarian's Trademarks are registered in Classes 41 and 43.

35.     The Defendants' conduct has been willful and deliberate. They have actual knowledge of Aquarian's ownership of the Works and the Trademarks, having been informed of those rights through hundreds of DMCA takedown notices, through the Ninth Circuit's opinion, and through the prior litigation against Lowndes. Orabi has publicly declared her intent to continue posting Aquarian's materials despite knowing the materials are owned solely by Aquarian.

## V.  CAUSES OF ACTION

### COUNT I
### (Copyright Infringement, 17 U.S.C. § 501)

36.     At all relevant times, Aquarian has been the sole and exclusive owner of each of the Registered Works and all copyright interests therein.

37.     Defendants have, without authorization or license from Aquarian, reproduced, distributed, publicly displayed, and publicly performed Aquarian's Registered Works by uploading them to servers in the United States, including those owned by YouTube, TikTok, Meta Platforms, X Corp., as well as vk.com, and by making them available for accessing, viewing and downloading by persons in the United States and elsewhere, even after the entry of the Ninth Circuit's opinion and the district court's final judgment and order closing the prior case.

38.     Defendants' conduct constitutes infringement of Aquarian's exclusive rights in the Registered Works under 17 U.S.C. § 106, including, without limitation, the rights of reproduction, distribution, public display, and public performance.

39.     Defendants' infringement has been willful, knowing, and intentional. Aquarian is entitled to the maximum statutory damages of $150,000.00 per infringed Registered Work for which statutory damages are available, or, at Aquarian's election, actual damages and profits attributable to the infringement.

40.     Defendants' activities have caused, and will continue to cause, irreparable harm to Aquarian. Pursuant to 17 U.S.C. § 502, Aquarian is entitled to preliminary and permanent injunctive relief prohibiting Defendants, and all others acting in concert with

them, from further infringing Aquarian's copyright interests in the Registered Works.

## COUNT II
### (Contributory Copyright Infringement)

41.     SAL has knowingly induced, caused, and materially contributed to the copyright infringement described above by directing, funding, organizing, and facilitating Orabi's and others' uploading and distribution of Aquarian's Registered Works, even after receiving notice from Aquarian of its exclusive ownership of the Registered Works. SAL has done so with actual knowledge that the Registered Works are owned solely by Aquarian and that no license exists for their use.

42.     To the extent that Orabi's infringing acts were performed on behalf of, at the direction of, or in coordination with SAL or other Defendants, each participating Defendant is jointly and severally liable for contributory infringement.

## COUNT III
### (Trademark Infringement, 15 U.S.C. § 1114)

43.     The CHURCH OF HIGHER SPIRITUALISM mark is a distinctive mark, and Aquarian has developed rights in it dating back to at least 1970. Aquarian's U.S. Trademark Registration No. 6,051,941 is valid and subsisting on the Principal Register and its rights therein are incontestable. Pl. Ex. 4, Trademarks.

44.     The Trefoil Marks are distinctive marks, and Aquarian has developed rights in them dating back to the Church's founding. Aquarian's U.S. Trademark Registration Nos. 6,922,668; 6,922,669; and 6,622,746 are valid and subsisting on the Principal Register. Pl. Ex. 4, Trademarks.

45.     Defendants' use of "Higher Spiritualism," "Higher Spiritualism Australia," "Spiritualism Australia" and the Trefoil Marks, and confusingly similar variations thereof, in connection with the sale, distribution, promotion, and advertisement of religious teachings, materials, and services infringes Aquarian's exclusive rights in the registered Trademarks.

46.     Defendants' use of these marks creates a likelihood of confusion among consumers as to the source, sponsorship, affiliation, or endorsement of Defendants' services, and falsely suggests that Defendants are authorized by, associated with, or sponsored by Aquarian.

47.     Defendants' infringement has been willful and deliberate. Aquarian is entitled to Defendants' profits attributable to the infringement, reasonable attorneys' fees, and prejudgment interest pursuant to 15 U.S.C. § 1117, as well as preliminary and permanent injunctive relief under 15 U.S.C. § 1116.

## COUNT IV
### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a)(1)(A))

48.     Aquarian has continuously used the CHURCH OF HIGHER SPIRITUALISM mark in interstate and foreign commerce since at least 1970. During that time, the Higher Spiritualism Mark and the services offered in connection with it have become associated exclusively with Aquarian.

49.     Aquarian has continuously used the Trefoil Marks in interstate and foreign commerce since the Church's founding. The Trefoil Marks serve as source identifiers for Aquarian's religious instruction services, and Orabi uses the Aquarian Mandala in

nearly every video she posts to social media in connection with identical services.

50.    Aquarian has continuously used the KMR Mark in interstate and foreign commerce as a mark for its religious instruction and spiritual services since at least 1955, when the Church was founded. Pl. Ex. 13, Werner Decl. at ¶ 14. Through more than 70 years of exclusive and continuous use, the KMR Mark has acquired secondary meaning, and the relevant consuming public associates the name KEITH MILTON RHINEHART with Aquarian and its religious teachings. The USPTO has issued a notice of allowance for registration of the KMR Mark, confirming that no other party has a superior claim to the name in connection with these services. Pl. Ex. 4, Trademarks. Defendants' unauthorized use of the name KEITH MILTON RHINEHART in interstate and foreign commerce to promote and advertise competing religious services constitutes a false designation of origin.

51.    Defendants' willful and intentional use in interstate and foreign commerce of "Higher Spiritualism," "Higher Spiritualism Australia," the Trefoil Marks, the KMR Mark, and similar designations constitutes a false designation of origin that creates a likelihood of confusion among consumers in the United States and abroad. Defendants' actions have deceived prospective members of the Church into believing that Defendants' services are those of, or are affiliated with, sponsored by, or approved by Aquarian, when they are not.

52.    Defendants' unauthorized use of these designations has caused Aquarian to lose control over the quality and messaging of services offered under and in connection with the Trademarks, diverting actual and prospective members and

diminishing the Church's ability to carry out its mission.

## COUNT V
### (Declaratory Judgment, 28 U.S.C. § 2201)

53.    There is an actual case or controversy between Aquarian and Defendants. Defendants have taken the position that they have the right to use Aquarian's Registered Works, Proprietary Works and Trademarks. Orabi has asserted in her DMCA counter-notification that she created the infringing material independently and possesses it lawfully. Orabi's statements and representations with respect to the ownership of the Registered Works, Proprietary Works and Trademarks are knowingly false and contrary to the Ninth Circuit's holdings and the Trademark registrations owned by Aquarian.

54.    Aquarian seeks a declaration from this Court under 28 U.S.C. § 2201 and Rule 57 of the FEDERAL RULES OF CIVIL PROCEDURE that (a) Aquarian is the sole owner of all right, title, and interest in and to the Registered Works, Proprietary Works and Trademarks and that (b) no Defendant, and no person acting in concert with either of them, possesses any license, express or implied, to use any of the Registered Works, Proprietary Works or Trademarks.

## COUNT VI
### (Misappropriation of Trade Secrets, RCW 19.108)

55.    The Proprietary Works identified in Plaintiff's Exhibit 11 constitute trade secrets under the Washington Uniform Trade Secrets Act, RCW 19.108. The Proprietary Works consist of confidential, nonpublic religious, educational, instructional, ceremonial, and archival materials authored by or associated with Aquarian Foundation.

56. The Proprietary Works derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, persons outside Aquarian who could obtain economic value from their disclosure or use. The restricted availability of the Proprietary Works is integral to Aquarian's religious and organizational structure, in which access to advanced teachings is granted progressively to members who demonstrate commitment to the Church's mission. Unauthorized disclosure of the Proprietary Works destroys that structure and diverts actual and prospective members to unauthorized sources. SAL has placed Proprietary Works behind its own paywall, demonstrating that the materials have economic value that others can and do exploit.

57. Aquarian has continuously taken reasonable measures to maintain the secrecy of the Proprietary Works, including limiting dissemination to authorized Church purposes and study group use, restricting access to inner sanctum members, declining to seek copyright protection of the works to avoid public disclosure, demanding return of all copies of the materials from Lowndes, objecting to unauthorized publication, and pursuing legal action and DMCA takedowns when the materials were posted without authorization.

58. Defendants acquired, disclosed, used, displayed, uploaded, distributed, and sought reinstatement of the Proprietary Works without Aquarian's authorization and with knowledge, or reason to know, that the Proprietary Works were obtained through Lowndes's prior relationship with Aquarian and his unauthorized retention of Church materials after excommunication. Defendants' conduct constitutes

misappropriation under RCW 19.108.010(2).

59. Defendants have distributed the Proprietary Works through interstate commerce on platforms including YouTube, TikTok, Facebook, Instagram, and X, all of which are operated by United States companies and accessible to persons throughout the United States.

60. Defendants' misappropriation has caused and will continue to cause irreparable harm to Aquarian by destroying the secrecy of the Proprietary Works, undermining Aquarian's ability to control access to its restricted religious teachings, and diverting actual and prospective members to unauthorized sources. Aquarian is entitled to injunctive relief under RCW 19.108.020, as well as damages under RCW 19.108.030.

**COUNT VII**
**(Preliminary and Permanent Injunctive Relief,**
**17 U.S.C. §§ 502 and 512(g) and 15 U.S.C. § 1116)**

61. Pursuant to 17 U.S.C. §§ 502 and 512(g) and 15 U.S.C. § 1116, Aquarian is entitled to preliminary and permanent injunctive relief restraining Defendants, and all persons acting in active concert or participation with them, from reproducing, distributing, publicly displaying, publicly performing, uploading, streaming, selling, licensing, or otherwise exploiting any of Aquarian's Registered Works, Proprietary Works[4] and Trademarks on any platform, website, social media account, or other medium, and from using "Higher Spiritualism," "Church of Higher Spiritualism," "Higher Spiritualism Australia," "Spiritualism Australia," the Trefoil Marks, the KMR

---

[4] For clarity, injunctive relief with respect to the Proprietary Works is not sought under the Copyright Act but is, instead, sought under RCW 19.108.020 and general rules of equity.

Mark, or any confusingly similar mark in connection with any goods or services.

62. Defendants do not have a license or other authorization from Aquarian to reproduce, distribute, or display the Registered Works, Proprietary Works or Trademarks.

63. Aquarian will continue to suffer irreparable harm absent injunctive relief. Defendants' ongoing and unauthorized distribution of the Registered Works, Proprietary Works and/or Trademarks on publicly accessible platforms deprives Aquarian of its exclusive right to control who receives its religious teachings and under what circumstances it chooses to do so. The Proprietary Works in particular were never intended for public distribution. Defendants have publicly declared their intent to continue uploading Aquarian's Registered Works, Proprietary Works and Trademarks, making the threat of future infringement both concrete and imminent. Monetary damages alone cannot remedy the losses it has suffered and will continue to suffer.

64. The balance of equities favors Aquarian. Defendants possess no right, license, or legitimate interest in the Registered Works, Proprietary Works or the Trademarks. An injunction would deprive Defendants of nothing to which they are entitled while protecting Aquarian's established rights.

65. An injunction serves the public interest. The public has a strong interest in the enforcement of copyright and trademark rights, and in ensuring that consumers are not confused about the source or sponsorship of religious services and materials.

66. Aquarian further seeks injunctive relief that specifically addresses the Defendants' misuse of the DMCA counter-notification process under 17 U.S.C. § 512(g).

Defendants have repeatedly filed counter-notifications containing false claims of ownership or independent creation, forcing Aquarian to engage in an endless cycle of takedown notices and counter-notifications on platforms including YouTube, TikTok, Facebook, Instagram, and X. The DMCA's counter-notification mechanism, 17 U.S.C. § 512(g)(2)(C), provides that a service provider is not required to restore removed material if the copyright owner provides notice that it has obtained a court order restraining the subscriber from engaging in infringing activity relating to the material on the service provider's system or network. Aquarian seeks an order that satisfies § 512(g)(2)(C), thereby eliminating Defendants' ability to compel the reinstatement of infringing content through counter-notifications directed at any of the Works.

## VI. <u>PRAYER FOR RELIEF</u>

Aquarian respectfully asks the Court to enter judgment against Defendants as follows:

(a)    Declare that Aquarian is the sole and exclusive owner of the Registered Works, Proprietary Works and Trademarks and all right, title, and interest therein, including all copyright interests; that no Defendant possesses any license to use the Registered Works, Proprietary Works and Trademarks in any manner.

(b)    Enter a preliminary and permanent injunction that (i) restrains and enjoins Defendants, and all persons acting in active concert or participation with them pursuant to Federal Rule of Civil Procedure 65(d)(2), 17 U.S.C. § 502 and all other applicable law, from reproducing, distributing, publicly displaying, publicly performing, uploading, or otherwise exploiting any of the Registered Works on any platform, website, or medium; (ii) restrains and enjoins Defendants from using "Higher Spiritualism," "Church of Higher Spiritualism," "Higher Spiritualism Australia," "Spiritualism Australia," the Trademarks, or any confusingly similar designation in connection with the goods or services which are the subject of the subject registrations or for which the marks are otherwise used; (iii) prohibits Defendants from filing any DMCA counter-notification under 17 U.S.C. § 512(g)(3), or any equivalent process on any platform or other publicly available site or application and (iv) constitutes an order within the meaning of 17 U.S.C. § 512(g)(2)(C) restraining Defendants from engaging in

infringing activity relating to the Registered Works and Proprietary Works on the systems and networks of YouTube (Google LLC), TikTok (ByteDance Ltd.), Meta Platforms, Inc. (Facebook and Instagram), X Corp., and all other online service providers, and directing any online service provider that receives a copy of the order not to restore, reinstate, or re-enable access to any of the Registered Works or Proprietary Works that have been removed or disabled pursuant to a notification of claimed infringement submitted by Aquarian, and to remove or disable access to any of the Registered Works or Proprietary Works that remain on its system or network upon receipt of the order.

(c)     Enter a preliminary and permanent injunction restraining Defendants, and all persons acting in active concert or participation with them who receive actual notice of the order, from acquiring, using, disclosing, uploading, posting, displaying, distributing, or seeking reinstatement of the Proprietary Works identified in Plaintiff's Exhibit 11, or any substantially similar version thereof, through any current or future account, URL, channel, profile, or online location controlled by, used by, or created at the direction of Defendants.

(d)     Award statutory damages to Aquarian in the amount of $150,000 per willfully infringed Registered Work for which statutory damages are available, or, at Aquarian's election, actual damages and Defendants' profits.

(e)     Award to Aquarian an accounting and disgorgement of Defendants' profits obtained through their use of the Trademarks and confusingly similar marks, in an amount to be determined.

(f)     Order Defendants to destroy all copies of the Registered Works, Proprietary Works and Trademarks in their possession, custody, or control.

(g)     Award Aquarian its reasonable attorneys' fees and costs of court under 17 U.S.C. § 505 and 15 U.S.C. § 1117.

(h)     Grant Aquarian all other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,


By: /s/ _____

    Hank Fasthoff
    FASTHOFF LAW FIRM PLLC
    State Bar No. 24003510
    Federal Bar No. 22959
    21 Waterway Ave., Suite 300
    The Woodlands, Texas 77380
    713.929.9314
    hank@fasthofflawfirm.com

**ATTORNEYS FOR PLAINTIFF**